**E-FILED**
Tuesday, 14 July, 2009  05:15:26 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## CIVIL ACTION

Mervin Lee Wolfe,

      Plaintiff,

v.

Barry Schaefer, Denise Lynn Church, Peter L. Rotskoff, and William A. Sunderman,

      Defendants.

No. _____

## COMPLAINT AND
## JURY DEMAND ON ALL COUNTS

## I.    JURISDICTION AND VENUE

1.    This is a civil rights action brought pursuant to 42 U.S.C. § 1983 et seq.; the Judicial Code, 28 U.S.C. §§ 1331 and 1343(a); the Constitution of the United States; and supplemental jurisdiction, as codified in 28 U.S.C. § 1367(a).

2.    This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b).  One or more of the parties reside, or, at the time the events took place, formerly resided in this judicial district, and the events giving rise to the claims asserted herein occurred here as well.

## II.    PARTIES

3.    Plaintiff Mervin Lee Wolfe, ["Wolfe"] is a natural person, a licensed attorney, and a member of the Illinois Bar residing at Toledo, Illinois, USA, during all relevant times herein.

4.    Defendant Barry Schaefer, ["Schaefer"] is a natural person, a licensed attorney, and member of the Illinois Bar residing at Siegal, Cumberland County, Illinois, USA and at all times relevant to this Complaint was the Cumberland County States Attorney.

5.    Defendant Denise Lynn Church ["Church"] is a natural person, a licensed attorney and a member of the Illinois Bar residing in Springfield, Illinois, USA and at all relevant times herein employed by the Attorney Registration & Disciplinary Commission, One North Old Capitol Plaza, Suite 333, Springfield,

IL 62701-1625.

6.     Defendant Peter L. Rotskoff ["Rotskoff"], is a natural person, a licensed attorney and a member of the Illinois Bar residing in Springfield, Illinois, USA and at all relevant times herein employed by the Attorney Registration & Disciplinary Commission, One North Old Capitol Plaza, Suite 333, Springfield, IL 62701-1625.

7.     Defendant William A. Sunderman ["Sunderman"], is a natural person, a licensed attorney and a member of the Illinois Bar residing in Charleston, Illinois, USA and at all relevant times herein, served as Chairman of the Judicial Inquiry Board, 100 West Randolph Street, Suite 14-500, Chicago IL 60601.

## III.    COMMON ALLEGATIONS

8.     First Neighbor Bank, N.A. ["FNB"] participated with former judge Robert B. Cochonour ["Cochonour"] in the systematic conversion of millions of dollars from the Estate of Jay E. Hayden, Martha L. Hayden and R. Maurine Johnson between 1985 and 2002.

9.     Sunderman represented FNB in the successful efforts of FNB to conceal documents and information regarding the FNB/Cochonour scam.

10.    Sunderman had prior knowledge of the FNB/Cochonour illegal activities and took actions to thwart all investigations thereof.

11.    To assist Sunderman, Church and Rotskoff were enlisted and later, Schaefer. The object of their conspiracy was to use their respective capacities as Chairman of the JIB, counsel for the ARDC and Cumberland County States Attorney to protect FNB and thwart any attempts to discover documents and information which may be useful to the victims of the FNB/Cochonour scam.

12.    Wolfe suspected FNB was withholding documents and information regarding the FNB/Cochonour scam.

13.    Wolfe discovered from Frank Rook, a former Sunderman client, that Sunderman and FNB were fully aware of Cochonour's illegal activities prior to 2002 but lacked admissible documents and information.

14.    Wolfe made repeated demands of FNB and Sunderman for documents and information during the Fall of 2003 and thereafter.

15.    Responding to Wolfe's demands, Sunderman proceeded to file meritless complaints with Church and Rotskoff and conspired with them in an attempt to coerce Wolfe to close his law office and leave the State of Illinois.

16.     During December of 2003, Church and Rotskoff orchestrated the closing of 10+ ARDC investigations and demanded Wolfe leave the State of Illinois or they would reopen selected complaints.

17.     During December of 2003, Wolfe was informed by his then wife, Julie, that Greg Glosser was approached in a murder for hire plot to have Wolfe killed.

18.     To avoid being murdered, Wolfe temporarily closed his office and left the State of Illinois during the first six months of 2004.

19.     In 2003, responding to community protests and demands over the sweetheart deal given former judge Cochonour, Cumberland County agreed to employ Assistant States Attorney R. Glen Wright primarily to conduct further investigations of Cochonour and others, including FNB, commencing in January 2004.

20.     Wright arranged a secret meeting with accountant Robert Doerr in February 2004. Although details thereof were only known by Wright, Doerr and Schaefer, a few days prior to the meeting, Doerr received threatening letters from counsel for Cochonour and his brothers, Don and Joe.  Neither Doerr nor Wright disclosed the meeting.  Upon information and belief, Schaefer did.

21.     Wright secretly met with Wolfe in early 2004 and Wright, upon discovering the murder for hire plot, obtained a court order to install an eavesdropping device.

22.     Wolfe's wife, Julie, and Glosser had two conversations, secretly taped, which were provided to Schaefer.  However, despite numerous representations by Schaefer that Glosser would be prosecuted, the tapes were released prior to any charges being filed.

23.     As indicated by Glosser in the taped conversations, attorneys were selected in advance.  Upon disclosure of the tapes, Glosser employed Sunderman.

24.     Glosser subsequently was charged with drug-related offenses some years later and is now in federal prison.

25.     In depositions of Carol Jo Fritts, President of FNB, while represented by Sunderman, she proceeded to lie about the FNB/Cochonour relationship.

26.     Sunderman was fully aware that Fritts lied in her depositions because he had direct participation in some of the transactions and had knowledge of the truth.

27.     Unable to confirm that Wolfe had permanently left the State of Illinois in the Spring of 2004, Church and Rotskoff proceeded to have an ARDC investigator swear the Circuit Clerk of Cumberland County to secrecy and demand that she

- 3 -

report on the whereabouts of Wolfe, while misrepresenting that Wolfe no longer had the right to practice law in Illinois.

28.     Wright was directed in 2004 by Schaefer to share grand jury information and documents with Church and did so.  Church claimed the sharing was part of her investigation of Wolfe and other attorneys.

29.     Church and Rotskoff publicly disclosed to Wright and Schaefer in 2004 that the ARDC was investigating Wolfe and were given access to Wolfe's testimony to the grand jury.

30.     Church and Schaefer directed Wright to serve an ARDC subpoena on Wolfe just prior to Wolfe entering the grand jury to testify about the FNB/Cochonour scam in mid-2004.

31.     Church and Rotskoff as ARDC attorneys have received several claims directed at Sunderman and closed all investigations summarily.

32.     Schaefer received evidence of extensive forgeries aided and abetted by FNB's President and others and has refused to prosecute FNB's President and others.

33.     By June 2004, as Wright was able to obtain a letter of assurance that Doerr would not be prosecuted by the U.S. Attorney and given some form of immunity by the States Attorney, Schaefer directed Wright to meet with the Illinois Attorney General's ["AG"] office.

34.     During the meeting referenced above, Wright discovered what Schaefer had long since known that a secret agreement existed between the AG and Cochonour that no further prosecutions could be made.  The secret agreement had also not been disclosed at the time of Cochonour's Plea Agreement.

35.     The revelation described in Paragraph 34 crippled Wright's investigation.

36.     The grand jury empanelled in 2004 was never asked to vote on indictments prepared by Wright because Schaefer refused Wright's request to present them.

37.     Under extreme pressure, Schaefer prosecuted Cochonour for one forgery in December 2005 but intentionally threw the case by refusing to introduce evidence he had of Cochonour's personal gain from the forgeries.  Wolfe begged Schaefer to introduce evidence thereof and Schaefer refused.  Cochonour was found not guilty for failure to provide evidence of personal gain.

38.     Schaefer continues to assert his investigation of Cochonour and others is ongoing but refuses to empanel a grand jury or file charges.  Instead, he testifies for attorney John Cutright that he has no knowledge of such wrong doing despite

being given evidence of same.

39.    Wolfe openly sought the position of Cumberland County States Attorney in 2008 to combat the corruption connected to Cochonour and his co-conspirators, i.e. brothers Joe and Don, Carol Jo Fritts, FNB, Sunderman, and Morris Lane Harvey.

40.    Church and Rotskoff intensified their efforts to open meritless investigations of Wolfe and worked with Schaefer to intentionally obstruct Wolfe's campaign for States Attorney against Schaefer.

41.    During the Fall of 2008, Schaefer approved a campaign ad in which he publicly disseminated his knowledge, obtained as a result of his office as States Attorney, of the confidential ARDC investigations concerning Wolfe.

42.    In said campaign ad, Schaefer also publicly disseminated confidential investigations by the Illinois Department of Revenue and Department of Employment Security, all of which he had knowledge due to his office as States Attorney.

43.    Although repeated attempts made to the IRS and U.S. Attorney have been made regarding $4.5 million in unreported taxable income by Cochonour and his brothers with no audit or investigation, Wolfe has been subjected to audits by the IRS, Department of Revenue and Department of Employment while being questioned simultaneously on such matters by Church.

44.    Illinois Supreme Court Rule 766(a)(1) prohibits any public disclosure of pending investigations by the Illinois ARDC and their agents, including Schaefer.

45.    Section 917 of the Illinois Income Tax Act (35 ILCS 5/91 7) prohibits the public disclosure of investigations and that such investigations shall be confidential. Any person who divulges information in violation of Section 91 7 shall be guilty of a Class A misdemeanor.

46.    Section 1900 of the Unemployment Insurance Act (820 ILCS 40511900) prohibits the public disclosure of investigations and provides that such investigations shall be confidential. Pursuant to Section 1900 C., any officer authorized to obtain information pertaining to an investigation, such as Defendant, who shall disclose information shall be guilty of a Class B misdemeanor and shall be disqualified from holding any appointment or employment by the State.

47.    Schaefer inserted himself into and assisted in the Illinois ARDC, income tax and unemployment insurance investigations and gained such information as a public official, and then proceeded to disclose same publicly for personal gain, i.e. campaign strategy to assist in his reelection as Cumberland County State's

Attorney.

48.     Illinois Supreme Court Rule of Professional Conduct 3.6 prohibits a lawyer who is participating in an investigation from making an extrajudicial statement which is being publicly disseminated which the lawyer knows may pose a threat to the fairness of an adjudicative process.

49.     Defendant's conduct was calculated to and did harm Wolfe, by interfering with Wolfe's opportunity to participate in a fair election, by harming his opportunity to obtain votes and support, and by injuring his reputation in the communities to which he aspired.

50.     Defendants knew that public disclosure of confidential investigations was in violation of the law and in violation of the privacy rights of Wolfe.

51.     Church abused the power she possessed by virtue of state law and made possible only because she is clothed with the authority of state law and was conducted under color of State law.

52.     Rotskoff abused the power he possessed by virtue of state law and made possible only because he is clothed with the authority of state law and was conducted under color of State law.

53.     Schaefer abused the power he possessed by virtue of state law and made possible only because he is clothed with the authority of state law and was conducted under color of State law.

54.     Sunderman abused the power he possessed by virtue of state law and made possible only because he was clothed with the authority of state law and was conducted under color of State law.

55.     Wolfe had a right of privacy based on Illinois law.

56.     Wolfe's alleged reliance on Illinois law gives rise to a liberty interest.

57.     Wolfe's right of privacy is protected under the U.S. Constitution.

58.     This action is brought under the provisions of 42 U.S.C. Sec. 1983 et.seq.

59.     As a result of Defendants' actions, Wolfe suffered mental anguish and suffering, as well as monetary loss.

60.     Defendants intentionally interfered with Wolfe's exercise and enjoyment of his clear and established rights secured by the state and federal constitutions and laws of the United States and/or the State of Illinois, thereby depriving him of those

rights and causing damages to him.

61.     The conspiracy, joint actions and overt acts of Defendants continue to this date, have caused and continue to cause Wolfe's constitutional rights to be violated and damages to result.

## COUNT I
### (INVASION OF AN EXPECTATION OF PRIVACY PROTECTED UNDER THE CONSTITUTION SECTION 1983 AND THE FOURTEENTH AMENDMENT CLAIM)

62.     Wolfe re-alleges paragraphs 1 through 61.

63.     The actions of Defendants in making false accusations in confidential investigations and then publishing confidential investigations of Wolfe violated Wolfe's rights provided under the Fourth and Fourteenth Amendments.

64.     The actions of the Defendants in falsely accusing Wolfe and threatening criminal prosecution, arrest and imprisonment and then publishing the confidential investigations of Wolfe while continuing to cover up their own misconduct were a direct and proximate cause of Wolfe's damages.

WHEREFORE, Plaintiff Mervin Lee Wolfe demands judgment against Defendants Barry Schaefer, Denise Lynn Church, Peter Rotskoff and William A. Sunderman for compensatory damages, and, because these Defendants acted maliciously, willfully, wantonly, and/or with reckless disregard for Wolfe's Constitutional rights, for punitive damages, plus the costs of this action, attorneys' fees and such other relief as this Court deems equitable and just.

## COUNT II
### (42 U.S.C. Section 1983 - CONSPIRACY)

65.     Wolfe re-alleges paragraphs 1 through 64.

66.     The Defendants reached an understanding, engaged in a sequence of events or course of conduct, and otherwise agreed and conspired together to violate the constitutional rights of Wolfe.

67.     Each Defendant did reach an understanding and agreement, and did engage in a course of conduct with the mutual purpose, objective, and knowledge that it would deprive Wolfe of his rights, privileges and immunities, as guaranteed by the Constitution and laws of the United States.

68.     Said conspiracy/joint action of Defendants violated Wolfe's Fourth Amendment rights, while acting under color of law, in violation of 42 U.S.C. Section 1983, and was a direct and proximate cause of Wolfe's pain, suffering and mental anguish.

- 7 -

69.  Acting in furtherance of the plan and conspiracy against Wolfe, each of the Defendants committed overt acts, including, but not limited to unjustifiable disclosures of confidential investigations.

70.  Defendants acted willfully, maliciously, intentionally, or with reckless disregard, and directly and proximately caused damages to Wolfe.

WHEREFORE, Plaintiff Mervin Lee Wolfe demands compensatory damages against each Defendant, and because the Defendants acted maliciously, willfully and/or wantonly, punitive damages, plus costs, attorney fees, and such other additional relief as this Court deems equitable and just.

## COUNT III
### (FAILURE TO PREVENT CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. SEC 1983 AGAINST)

71.  Wolfe re-alleges paragraphs 1 through 70.

72.  The public disclosure of confidential investigations of Wolfe by one or more of the Defendants was witnessed and encouraged by the other Defendants.

73.  One or more of the Defendants as public officials had the opportunity and duty to prevent the violation of Wolfe's civil rights by the other Defendants, but failed to do so.

74.  The failure of one or more of the Defendants as public officials to prevent the alleged civil rights violations was a contributory cause of Wolfe's damages.

75.  Church as a agent for the ARDC was acting under the direction and control of Peter Rotskoff of the ARDC.  Rotskoff knowingly, recklessly, and with gross negligence failed to instruct, supervise, control, and discipline Church on a continuing basis regarding her obligatioins to refrain from:

(a) unlawfully and maliciously harassing Wolfe who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

(b) unlawfully and maliciously prosecuting Wolfe who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

(c) conspiring to violate the rights, privileges, and immunities guaranteed to Wolfe by the Constitution and laws of the United States and the laws of the State of Illinois; and

- 8 -

(d) otherwise depriving Wolfe of his constitutional and statutory rights, privileges, and immunities.

76.     Church and Rotskoff had the authority and power to prevent or aid in preventing the commission of the aforesaid violations of Wolfe's rights, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

77.     Church and Rotskoff directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Schaefer. As a direct and proximate cause of the negligent and intentional acts of Church and Rotskoff, Wolfe suffered injuries, loss of income, and severe mental anguish in connection with the deprivation of his constitutional and statutory rights guaranteed by the Fourth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. §1983.

WHEREFORE, Plaintiff Mervin Lee Wolfe demands judgment against the Defendants Church and Rotskoff for actual, general, special, compensatory damages in the amount of $500,000 and further demands judgment against said Defendant for punitive damages in the amount of $100,000, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS.**

Respectfully submitted,

/s/ Mervin Lee Wolfe
ARDC No. 6257695

Wolfe Law Office
204 South Meridian
Toledo, IL 62468
Phone (217) 849-3635
Fax (217) 849-3875
Email:  mervinleewolfe@yahoo.com